FELDBAUER v COONEY ENGINEERING COMPANY (ON REMAND)

Docket No. 157659. Submitted February 16, 1994, at Detroit. Decided May 16, 1994, at 9:25 A.M. Leave to appeal sought.

Edward J. Feldbauer received worker's compensation benefits for partial disability after he fractured his right thighbone in the course of employment by Cooney Engineering Company. He eventually resumed work. Eleven years later, he fractured the same bone in an accident that was not related to his employment with All Seasons Heating & Cooling Company and was awarded worker's compensation benefits for total disability payable by Cooney Engineering and its insurer, Sentry Insurance Company, after proceedings before a worker's compensation hearing referee and the Worker's Compensation Appeal Board, which determined that the one-year-back rule applied to limit Feldbauer's benefits for total disability. Cooney Engineering and Sentry sought and were denied leave to appeal by the Court of Appeals. The Supreme Court, in lieu of granting leave to appeal, remanded the case to the Court of Appeals for consideration as on leave granted. 441 Mich 852 (1993).

On remand, the Court of Appeals *held:*

1. A subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if, as in this case, it is the direct and natural result of the compensable primary injury and the claimant's own conduct has not acted as an independent intervening cause of the subsequent injury or aggravation.

2. The one-year-back rule, MCL 418.833(1); MSA 17.237(833)(1), does not apply to the claim of benefits for the subsequent injury because that claim is for a different category of benefits, i.e., the original claim was for partial disability and the subsequent claim was for total disability. The two-year-back rule, MCL 418.381(2); MSA 17.237(381)(2), applies instead.

Affirmed as modified for application of the two-year-back rule.

REFERENCES

Am Jur 2d, Workers' Compensation §§ 61, 368, 387, 431.
See ALR Index under Workers' Compensation.

1. WORKER'S COMPENSATION — SUBSEQUENT INJURIES.

Worker's compensation benefits may be extended to a subsequent injury or aggravation of a primary injury where the primary compensable injury arises out of and in the course of employment, the subsequent injury or aggravation is the direct and natural result of the primary injury, and the claimant's own conduct has not acted as an independent intervening cause of the subsequent injury or aggravation.

2. WORKER'S COMPENSATION — ONE-YEAR-BACK RULE.

The one-year-back rule of the worker's compensation act, which bars payment of worker's compensation benefits in some circumstances for any period more than one year before the date of application for benefits, does not apply to a subsequent claim for benefits if that claim is for a category of benefits that is different from that of the original claim; accordingly, a subsequent claim for benefits for total disability that was preceded by an original claim for benefits for partial disability is not subject to the one-year-back rule (MCL 418.833[1]; MSA 17.237[833][1]).

*Kelman, Loria, Downing, Schneider & Simpson* (by *Ann Curry Thompson*), for Edward J. Feldbauer.

*MacArthur, Murray & Associates, P.C.* (by *Paula M. Murray*), for Cooney Engineering Company and Sentry Insurance Company.

*Conklin, Benham, Ducey, Listman & Chuhran, P.C.* (by *Martin L. Critchell*), for All Seasons Heating & Cooling Company and Ohio Casualty Insurance Company.

ON REMAND

Before: CORRIGAN, P.J., J. H. GILLIS, SR.,* and C. H. STARK,** JJ.

---

* Former Court of Appeals judge, sitting on the Court of Appeals pursuant to Administrative Order No. 1993-6.

** Circuit judge, sitting on the Court of Appeals by assignment.

CORRIGAN, P.J. After this Court denied defendants-appellants' application for leave to appeal, the Supreme Court remanded the case for consideration as on leave granted. 441 Mich 852 (1993). In its order of remand, the Supreme Court did not specify the issues warranting plenary consideration.[1] Consistent with our original disposition by order on the application for leave, we affirm.

Plaintiff fractured his right thighbone in a work-related automobile accident on October 20, 1970, while he was employed by Cooney Engineering

---

[1] The Supreme Court's expanding practice of remanding appeals for consideration as on leave granted, without providing accompanying specific instructions, adds to this Court's delay in deciding cases. In 1993, the Supreme Court remanded 101 cases to this Court, of which forty were remanded for consideration as on leave granted. Most of the remanded cases involve worker's compensation claims. To my knowledge, in only one of those cases did the Supreme Court actually provide specific instructions on remand. A general Lexis search confirms that before 1984, the Supreme Court remanded only a handful of cases to this Court. In 1984, the Supreme Court remanded twenty-five cases to this Court. By the late 1980s, the number of remands steadily rose from forty-nine in 1987, to eighty-seven in 1992.

Remand orders overlook the thorough review given to the briefs and records on applications for leave to appeal. The increasing number of remands exacerbates this Court's well-documented backlog problem and this Court's poor clearance rate, the worst of the eight largest intermediate state appellate courts in the country. Hanson, *Report on the Michigan Court of Appeals: A Focus on Court Workload, Responsiveness, and Resources,* 4 National Center of State Courts (Preliminary Draft, October 8, 1993). These 1993 remands essentially will consume the entire monthly workload of one panel of this Court.

We would ask the Supreme Court to exercise greater restraint in remanding cases to us, as well as to specify the issues warranting our plenary consideration. This Court, with its crushing caseload, attempts to extend the same courtesy to the trial courts in ordering remands. Greater specificity in remand orders would assist this Court's attempts to dispense justice on appeal expeditiously.

Finally, to reduce the amount of guesswork involved in construing the form remand orders, we advise counsel to furnish this Court with copies of the documents filed in the Supreme Court. The panel on remand does not routinely receive the documents that were considered in the Supreme Court in generating the remand order.

Company. The employer paid plaintiff partial disability compensation benefits. The fracture never healed completely. Plaintiff again fractured the same bone in an accident unrelated to work when he tripped over a chair in a bar eleven years later on December 27, 1981. At that time, he was employed by All Seasons Heating & Cooling Company. A worker's compensation hearing referee awarded plaintiff disability compensation benefits for total disability. The Worker's Compensation Appeal Board affirmed the award. Both the referee and the board attributed the current disability to the original work-related injury and assigned liability to the original employer, Cooney Engineering Company.

### I. CAUSATION

Defendants contend that plaintiff is not entitled to further disability compensation benefits because he reestablished a wage-earning capacity in regular work with Cooney Engineering Company and other employers in the eleven years after his initial injury and the injury did not arise out of or in the course of any employment, but only from an accident that was not related to work. Defendants argue that compensation liability should arise only if the original injury plays some part in the *occurrence* of the subsequent injury, and not merely affects its results.

Plaintiff argues that the bureau properly held that where a work-related injury is aggravated to the point of total disability by a subsequent injury that occurs as a consequence of the original injury, liability attaches to the original injury and the original employer.

We reject as incorrect defendants' proposed distinction between "injury" and "results of that

injury." Michigan follows the view of Professor Arthur Larson in 1 Larson, Workmen's Compensation Law, § 13.11, as relied upon by this Court in *Schaefer v Williamston Community Schools,* 117 Mich App 26, 37; 323 NW2d 577 (1982):

> [W]here the primary compensable injury arises out of and in the course of employment compensability may be extended to a subsequent injury or aggravation of the primary injury where it has been established that the subsequent injury or aggravation is the direct and natural result of the primary injury and the claimant's own conduct has not acted as an independent intervening cause of the subsequent injury or aggravation.

The Larson rule states:

> A distinction must be observed between causation rules affecting the primary injury . . . and causation rules that determine how far the range of compensable consequences is carried, once the primary injury is causally connected with the employment. As to the primary injury, it has been shown that the "arising" test is a unique one quite unrelated to common-law concepts of legal cause, and it will be shown later that the employee's own contributory negligence is ordinarily not an intervening cause preventing initial compensability. But when the question is whether compensability should be extended to a subsequent injury or aggravation related in some way to the primary injury, the rules that come into play are essentially based upon the concepts of "direct and natural results," and of claimant's own conduct as an independent intervening cause.
>
> The basic rule is that a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury. [Larson, *supra,* pp 3-502—3-503.]

In *Schaefer,* the plaintiff "seriously injured and weakened" his back while he was employed as a bus driver. 117 Mich App 31. The plaintiff received compensation benefits while he was off work for about a month following his injury. More than a year later, he reinjured his back in moving a household. The plaintiff proved that his "primary injury" arose out of and in the course of his employment.

The *Schaefer* Court accepted the two-part test suggested by Larson. That test requires a showing that (1) the subsequent injury was the "direct and natural result" of the primary injury and (2) that the claimant's own conduct did not act as an independent intervening cause. 117 Mich App 35.

In this case, no one suggested, and even defendants do not argue, that plaintiff was negligent when he tripped over the chair in the bar. Accordingly, the only inquiry is whether competent evidence supports the board's finding that plaintiff's second injury was the direct and natural result of the primary injury. Ample evidence, especially the testimony of the treating orthopedic surgeon, Dr. Herbert Mendelson, and that of Dr. Frank Cullis, supports the finding. The second break and the surgery it required have "resulted in problems of a permanent nature, diminished range of motion, diminished muscle strength and shortening of the limb and a walk that is a rolling gait because of the shortened limb." Both physicians found plaintiff to be severely restricted in his ability to perform common labor.

Defendants' reliance on *Brinkert v Kalamazoo Vegetable Parchment Co,* 297 Mich 611; 298 NW 301 (1941), to discredit cases cited by the appeal board majority is misplaced. *Brinkert* was not a case involving a subsequent injury. The Court observed:

The case under consideration, however, does not, in our opinion, belong in this classification. The plaintiff had returned to work and was performing his regular duties when struck by and thrown across the dolly with his present total disability as a result. The previous accidental injury in no way contributed to or brought about the accident which occurred on September 14, 1939. The injury he received on that date was caused by the action of an independent intervening force, which became operative without relation to the previous injury. [297 Mich 615.]

Also distinguishable is *Adkins v Rives Plating Corp,* 338 Mich 265; 61 NW2d 117 (1953), upon which defendants rely. The plaintiff in that case suffered a compensable broken arm at work. Five months later he returned to favored work. Three months after that, the plaintiff broke his arm while riding a bicycle in an accident not related to his work. Medical examination revealed that the plaintiff's arm had not properly healed from his initial work-related injury and therefore it was much easier for him to break the arm again during the bicycle accident. The *Adkins* Court concluded that the proximate cause of the second injury was plaintiff's riding a bicycle. The Court noted that even though the plaintiff's right arm might not have been completely healed, "the first injury did not prevent Adkins from working." 338 Mich 271.

*Schaefer v Williamston Community Schools, supra,* reads *Adkins* as turning on the question whether the plaintiff's second injury was the result of his own independent, intervening negligent conduct. As noted, this case poses no issue concerning whether the plaintiff's second injury arose from an independent intervening cause attributable to the plaintiff. *Schaefer* explains:

We do not read *Adkins* as standing for the principle that because the claimant's second injury occurred on a Sunday and not at work, that, in and of itself, is enough to conclude that the claimant is not entitled to compensation. Rather, we view *Adkins* as standing for the principle, consistent with Larson's view, that to be entitled to compensation under the facts of that case the claimant had to prove that his subsequent injuries were the direct and natural result of his primary injury *and* that his own conduct did not act as an independent intervening cause which defeated the causal nexus between the primary and subsequent injuries. The *Adkins* Court concluded that the claimant did not establish the requisite relationship between the primary and subsequent injuries. [117 Mich App 35. Emphasis in original.]

Competent evidence sustains the appeal board's finding that plaintiff's second injury, which led to total disability, is the direct and natural result of plaintiff's earlier work-related injury.

## II. ONE-YEAR-BACK RULE

The one-year-back rule of § 833(1) of the Worker's Disability Compensation Act, MCL 418.833(1); MSA 17.237(833)(1) provides: "If payment of compensation is made, other than medical expenses, and an application for further compensation is later filed with the bureau, no compensation shall be ordered for any period which is more than 1 year prior to the date of filing such application." It does not apply to these facts.

The hearing referee did not discuss this point. The appeal board's discussion of the one-year-back rule was ambiguous. The majority applied the one-year-back rule, holding that plaintiff was entitled to supplemental benefits (an issue not involved in this appeal) "after becoming totally disabled on

December 18, 1981," and then added, "However, MCL 418.833 applies." The majority's rationale was:

> I distinguish *Rice v Michigan Sugar Co,* 83 Mich App 508 [269 NW2d 202] (1978) and the other cases cited by plaintiff on the facts, and find that they are not applicable to the instant case. Plaintiff is not entitled to benefits before May 23, 1982 through the application of the one-year back rule (one year before the date of plaintiff's last petition, received on May 23, 1983).

However, the majority's order appears to limit the one-year-back rule only to the payment of supplemental benefits. The order reads, in pertinent part:

> Plaintiff is entitled to supplemental benefits. MCL 418.352 [MSA 17.237(352)] [supplemental benefits] applies. MCL 418.833 [MSA 17.237(833)] (the one year back rule) also applies. *Supplemental benefits are therefore only applicable to benefits received after May 23, 1982.* [Emphasis added.]

The one-year-back rule is not controlling. The phrase "further compensation" in § 833(1) is a term of art referring to compensation "for the same category of disability." *Martin v Somberg-Berlin Metals Co,* 407 Mich 737, 741; 288 NW2d 574 (1980); see also *Cupples v AMEC, Inc,* 84 Mich App 498; 269 NW2d 653 (1978); *Rice v Michigan Sugar Co,* 83 Mich App 508; 269 NW2d 202 (1978). The one-year-back rule does not apply when the subsequent claim for disability compensation benefits is a claim for compensation for a different category of benefits. As more precisely explained in *Cupples v Amec, Inc, supra,* the one-year-back rule does not apply if a subsequent claim is for

further development of the original disability, rather than for further compensation for the original injury. Or, as *Rice v Michigan Sugar Co, supra,* suggests, the rule is inapplicable if a single injury produces two distinct results.

Thus, for example, the one-year-back rule does not apply to a later claim for total and permanent disability benefits where the claimant had earlier collected specific-loss benefits. *Piwowarski v Detroit Sulphite Pulp & Paper Co,* 412 Mich 716; 316 NW2d 719 (1982). Accord *Page v Asplundh Tree Expert Co,* 172 Mich App 636; 432 NW2d 384 (1988) (general disability versus total and permanent disability for incurable insanity); *Lopez v Flower Basket Nursery,* 122 Mich App 680; 332 NW2d 630 (1982) (total disability versus total and permanent disability); *Banks v DeClerk Industries, Inc,* 111 Mich App 489; 314 NW2d 663 (1981) (specific loss versus total and permanent disability); *Cupples v AMEC, Inc, supra* (general disability versus permanent and total disability); *Rice v Michigan Sugar Co, supra* (general disability versus total and permanent disability); *Bailey v General Motors Corp,* 83 Mich App 335; 268 NW2d 537 (1978) (general disability versus total and permanent disability).

That is the situation here. Plaintiff's original injury in the automobile accident produced partial disability that did not prevent him from resuming partial employment in favored work. The reinjury in 1981 rendered plaintiff totally disabled, as found by the hearing referee, and as affirmed by the appeal board. A claim for total disability benefits after partial disability is a claim for a different category of benefits. For example, the benefit rate for total disability is eighty percent of the employee's after-tax average weekly wage under § 351(1) of the act, MCL 418.351(1); MSA 17.237(351)(1).

Partial disability, on the other hand, is compensable at the same rate, but reduced by the employee's residual wage-earning capacity, MCL 418.361(1); MSA 17.237(361)(1); *Sobotka v Chrysler Corp (On Rehearing),* 198 Mich App 455; 499 NW2d 777 (1993), lv gtd 443 Mich 869. In addition, a totally disabled person may be eligible for supplemental benefits under § 352, as this plaintiff is, but a partially disabled person is not. MCL 418.352; MSA 17.237(352).

In this case, defendants voluntarily paid disability compensation benefits for partial disability, but both the hearing referee and the appeal board found that plaintiff's later reinjury rendered him totally disabled. Because total disability is a different category than partial disability, the appeal board should have refused to apply the one-year-back rule. However, as plaintiff concedes, the two-year-back rule of MCL 418.381(2); MSA 17.237(381)(2) governs.

The decision of the appeal board is affirmed, but modified to provide that the two-year-back rule of MCL 418.381(2); MSA 17.237(381)(2) applies.